UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEGGY NOLAN, on behalf of herself and all                    **REPORT AND**
others similarly situated,                                    **RECOMMENDATION**

                              Plaintiffs,

v.                                                           13-CV-00333(A)(M)

OLEAN GENERAL HOSPITAL,
UPPER ALLEGHENY HEALTH SYSTEM, INC.,
ELI LILLY AND COMPANY, NOVO NORDISK, INC.,
NOVO NORDISK PHARMACEUTICAL INDUSTRIES,
INC., and SANOFI-AVENTIS U.S., LLC,

                              Defendants.
_____

          Plaintiff Peggy Nolan has moved to remand this action to State of New York

Supreme Court, County of Cattaraugus or, in the alternative, for severance and partial remand

[27].[1]  That motion, being dispositive,[2]  has been referred to me by Hon. Richard J. Arcara for a

Report and Recommendation [18]. Oral argument was held on June 10, 2013 [33].

          For the following reasons, I recommend that the motion for remand of the entire

action be granted, and that the alternative request for severance and partial remand be denied.


                              **BACKGROUND**

          Plaintiff commenced this action in State of New York Supreme Court, County of

Cattaraugus on March 1, 2013, seeking relief pursuant to New York CPLR Article 9 "on behalf

of herself and on behalf of all persons who were potentially exposed to HIV, Hepatitis C, and/or

---

[1]        Bracketed references are to CM-ECF docket entries.

[2]        Williams v. Beemiller, Inc., 527 F.3d 259, 266 (2d Cir. 2008).

Hepatitis B through the re-use of insulin pens and cartridges on patients at OLEAN GENERAL HOSPITAL". Complaint [1-2], ¶2; Amended Complaint [26], ¶2. On April 3, 2013, defendant Eli Lilly and Company removed the action to this court, alleging that the court "has original jurisdiction over this action under 28 U.S.C. §1332 on the alternative grounds that (a) this action is removable under the Class Action Fairness Act ('CAFA') and (b) complete diversity exists between plaintiff . . . and Defendants under 28 U.S.C. §1332(a) when the citizenship of dispensable and improperly joined defendants Olean General Hospital and Upper Allegheny Health System is disregarded". Notice of Removal [1], p. 1.

In moving to remand, plaintiff initially argues that, given the predominantly local nature of the dispute, the court must decline to exercise subject matter jurisdiction under CAFA, as required by 28 U.S.C. §§1332(d)(4)(A) and (B). Plaintiff's Memorandum of Law [27-1], Points I and II. Defendants Olean General Hospital and Allegheny Health System, Inc. (the "Hospital Defendants") "take[ ] no position" regarding that argument (Hospital Defendants' Memorandum of Law [29-1], pp. 2-3), and the remaining defendants (the "Insulin Pen Manufacturer Defendants") "agree that the Court should abstain from exercising jurisdiction under CAFA since the proposed class consists almost exclusively of New York residents and the [Hospital Defendants] are New York citizens too". Insulin Pen Manufacturer Defendants' Memorandum of Law [30], p. 2.

Plaintiff argues that the action should be remanded "in its entirety, or in the alternative, the action should be severed, remanding those portions against [the Hospital Defendants] to New York State Supreme Court, Cattaraugus County, and retaining those portions against the Insulin Pen Manufacturer defendants" in this court. Plaintiff's Memorandum of Law

[27-1], p. 12.  The Hospital Defendants contend that that there is no basis for severance, and argue that "should this Court find that it lacks subject-matter jurisdiction under CAFA, this entire action must be remanded . . . as complete diversity among the parties is wholly lacking".  Hospital Defendants' Memorandum of Law [29-1], p. 12.

The Insulin Pen Manufacturer Defendants argue that "[t]he Hospital Defendants are dispensable parties under Fed. R. Civ. P. ["Rule"] 19, and the Court should therefore disregard their citizenship and sever the claims against them pursuant to [Rule] 21 in order  to retain jurisdiction".  Insulin Pen Manufacturer Defendants' Memorandum of Law [30], p. 5.  They also "incorporate by reference the portion of their Notice of Removal pertaining to improper joinder".  Id.


## ANALYSIS

While this court technically has subject matter jurisdiction under the minimal diversity requirements of CAFA, the parties agree that in this case it is precluded from exercising that jurisdiction. 28 U.S.C. §1332(d)(4) "inherently recognizes [that] the district court has subject matter jurisdiction by directing the court to decline to exercise such jurisdiction when certain requirements are met . . . . Thus, the exceptions in §1332(d)(4) do not divest the district court of subject matter jurisdiction, but rather, operate as an abstention doctrine." Gold v. New York Life Ins. Co., 2012 WL 1674300, *2 (S.D.N.Y. 2012).  Under these circumstances, "subject matter jurisdiction is present, but the district court may not hear the matter, assuming a timely motion to remand is filed".  Calingo v. Meridian Resources Co. LLC, 2011 WL 3611319, *4 (S.D.N.Y. 2011).

Therefore, my analysis will proceed as though CAFA subject matter jurisdiction did not exist, and will focus instead on the alternative basis urged for removal, namely diversity of citizenship under 28 U.S.C. §1332(a)(1). It is "axiomatic . . . that diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships". Herrick v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001). "That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original).

## A. Have the Hospital Defendants Been Improperly Joined?

The Notice of Removal [1] alleges that the citizenship of the non-diverse Hospital Defendants should be disregarded because they were improperly joined, arguing that "[i]mproper joinder occurs when a plaintiff attempts to defeat removal by improperly joining unrelated claims against non-diverse parties (id., ¶31). "Fraudulent misjoinder occurs when a plaintiff purposefully attempts to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." Federal Insurance Company v. Tyco International Ltd., 422 F.Supp.2d 357, 378 (S.D.N.Y. 2006).

The "fraudulent misjoinder" doctrine originated with Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996). In Tapscott, the plaintiffs joined claims against automobile dealers for violations of service contracts in connection with the sale of automobiles with claims against Lowe's (a non-diverse party) and other merchants for violations of extended

service contracts in connection with the sale of retail products (id. at 1355).  Plaintiffs did not

argue "that Lowe's was properly joined with any other non-diverse defendants" (id. at 1360), but

instead "contend[ed] that while a court may disregard the citizenship of fraudulently joined

parties, a misjoinder, no matter how egregious, is not fraudulent joinder".  Id.

   The court disagreed, noting that "the alleged transactions involved in the

'automobile' class are wholly distinct from the alleged transactions involved in the 'merchant'

class . . . . Misjoinder may be just as fraudulent as the joinder of a resident defendant against

whom a plaintiff has no possibility of a cause of action.  A defendant's right of removal cannot

be defeated by a fraudulent joinder of a resident defendant having no real connection with the

controversy".  Id.  However, it cautioned that "[w]e do not hold that mere misjoinder is

fraudulent joinder, but . . . Appellants' attempt to join these parties is so egregious as to

constitute fraudulent joinder." Id.

   Unlike Tapscott, in which there was no factual relationship between the claims

against the diverse and non-diverse defendants, in this case the claims all arise from the use of

insulin pens at Olean General Hospital. Whether or not  those claims were properly joined - and I

believe they were - they clearly were not "egregiously" misjoined.  Therefore, the "fraudulent

misjoinder" doctrine is inapplicable in this case.

   I will next address the Insulin Pen Manufacturers' suggestion that I sever the

claims against the Hospital Defendants pursuant to Rule 21.

**B.      Does Rule 21 Authorize Severance in this Case?**

The Insulin Pen Manufacturer Defendants argue that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered, to achieve complete diversity and establish proper jurisdiction." Insulin Pen Manufacturers' Memorandum of Law [30], p. 5 (*citing* Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989)).

"Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 582 (2004). While "[t]he last thing the federal courts need is more procedural complexity", Tyco International, 422 F. Supp.2d at 382, in my view that is exactly what Newman-Green has created.

**1.      The Interplay Between Rule 21 and Rule 82**

Although some cases have held that the citizenship of a "dispensable" party need not even be considered in determining diversity,[3] Newman-Green stated that the existence of a

---

[3]      *See*, *e.g.*, Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 189-90 (1924) ("On the question of jurisdiction, an unnecessary and dispensable party, will not be considered"); Horn v. Lockhart, 84 U.S. 570, 579 (1873) ("They were not indispensable parties, that is, their interests were not so interwoven and bound up with those of the complainants, or other parties, that no decree could be made without necessarily affecting them. And it was only the presence of parties thus situated which was essential to the jurisdiction of the court").

nondiverse dispensable party "spoils statutory diversity jurisdiction". 490 U.S. at 827.[4]

Therefore, when such a party is present, "jurisdiction does not, in fact, exist". Id. at 831.

Although Newman-Green does state that "a district court can . . . dismiss a

dispensable nondiverse party" under Rule 21 (id. at 832), that proposition was *assumed*, not

actually decided by the Court. "The narrow question before us . . . is whether a *court of appeals*

may do what a district court can do and dismiss a dispensable nondiverse party itself." Id.

(emphasis added). What Newman-Green actually decided is "that a court of appeals may grant a

motion to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction". Id.

at 827.

"It is to the holdings of . . . cases, rather than their dicta, that we must attend."

Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 379 (1994). If "general

expressions, in [an] opinion . . . go beyond the case, they may be respected, but ought not to

control the judgment in a subsequent suit when the very point is presented for decision." Central

Virginia Community College v. Katz, 546 U.S. 356, 363 (2006). The question before me is not

what a court of appeals can do, but what *this* court can do, and that question entails different

considerations from those discussed in Newman-Green.

---

[4]      *See also* 13E Wright, Miller, *et al.,* Federal Practice & Procedure (Jurisdiction),
§3606 (3d ed.) ("It occasionally was said too loosely in some older cases that only the citizenship of
'indispensable' - Rule 19(b) - parties will be considered in determining whether diversity jurisdiction
exists. This simply is not the rule.  Even though a party is merely proper, as, for example, a joint
tortfeasor, if in fact he or she has been joined in the action, that party's citizenship must be considered
for purposes of determining whether subject matter jurisdiction exists"); Dowgiert v. Hagopian, 2013
WL 1191896, *1 (D.N.H. 2013) ("even if ASC is not 'indispensible' under Rule 19(b) . . . it has been
joined as a party here, so its citizenship 'counts' for purposes of diversity jurisdiction").

Unlike a circuit court of appeals - to whom the Rules do not apply[5] - district courts are obligated to follow the Rules, which are "in every pertinent respect, as binding as any statute duly enacted by Congress".  Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988).  "[F]ederal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions".  Id.

Where the language of the Rules is clear, a court's "inquiry is complete".  Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 540-41 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning . . . . Our inquiry is complete if we find the text of the Rule to be clear and unambiguous"); United States v. Davila, ___U.S.___, 2013 WL 2631064, *11 (June 13, 2013) (Scalia and Thomas, JJ., concurring) ("the text of the Rule conclusively resolves the question before us") . Courts "have no power to rewrite the Rules by judicial interpretations".  Harris v. Nelson, 394 U.S. 286, 298 (1969).

While Newman-Green focused solely upon Rule 21, "no single Rule can . . . be considered in a vacuum".  Nasser v. Isthmian Lines, 331 F.2d 124, 127 (2d Cir. 1964).  Instead, the rules "must be read together".  Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990). Rule 82, which was not mentioned by the Newman-Green, majority, unequivocally states that "[t]hese rules do not extend or limit the jurisdiction of the district courts".  Instead, they "merely prescribe the method by which the jurisdiction granted the courts by Congress is to be exercised." Kontrick v. Ryan 540 U.S. 443, 454 (2004).

---

[5]     "[T]he Federal Rules . . . strictly apply only in the district courts".  Newman-Green, 490 U.S. at 832 (*citing* Rule 1).

Therefore, "an independent ground for subject matter jurisdiction must exist before the Rules are applied". 14 Moore's Federal Practice, §82.02 (Matthew Bender 3d ed.). "To use [a] Rule . . . to *establish* jurisdiction would be to bootstrap jurisdiction into existence; it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction". Chao v. Russell P. Le Frois Builder, Inc., 291 F.3d 219, 229 (2d Cir. 2002) (emphasis in original).[6]

While the Insulin Pen Manufacturer Defendants point out that "[t]here is no Supreme Court or Second Circuit precedent that supports an inconsistency between Rules 21 and 82" (Letter Brief [34], p. 3), perhaps that is because to my knowledge, at least, neither a Supreme Court majority nor the Second Circuit has expressly considered those two Rules together. However the Newman-Green dissenters (Kennedy and Scalia, JJ.) did so, noting that "[a]s an initial matter it is disturbing that the Court does not address in a substantive way the grave, brooding question whether [Rule] 21 affords even the district courts the power to confer jurisdiction retroactively by dismissing a nondiverse party . . . . Since dismissing a nondiverse party confers jurisdiction retroactively on the district court, it is questionable whether relying on Rule 21 is consistent with Rule 82's clear admonition". 490 U.S. at 839-40.

Although the Newman-Green majority did not directly respond to the dissenters' concerns, it seems to have acknowledged that its solution to the jurisdictional problem, while perhaps practically sensible, is logically suspect. "Appellate-level amendments to correct

---

[6]     *See also* Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 70 (2d Cir.1990) ("The Rules do not provide an independent ground for subject matter jurisdiction over an action for which there is no other basis for jurisdiction"); Dery v. Wyer, 265 F.2d 804, 808 (2d Cir. 1959) ("A rule of procedure . . . however convenient and salutary it may be, is without efficacy to extend the jurisdiction of a court").

jurisdictional defects may not be the most intellectually satisfying approach to the spoiler problem, but . . . because law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities." Id. at 836-37.

The question left unanswered by Newman-Green and its progeny which speak of the power to "cure" jurisdictional defects[7] is this: what is the source of a court's power to "correct" or "cure" defects in jurisdiction, when (according to Newman-Green) jurisdiction "does not, in fact, exist"? In each case, "judicial action (such as granting a motion to dismiss) was necessary to get the jurisdictional spoilers out of the case", Grupo Dataflux, 541 U.S. at 580,[8] yet how can there be "judicial action" without the power to act in the first place?

"Without jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998); Ex parte McCardle, 74 U.S. 506, 514 (1868). How, then can a "correction" or "cure" by a court lacking jurisdiction have any effect? "Without jurisdiction, any decision or ruling by the court would be a nullity." Gutierrez v. Fox, 141 F.3d 425, 426 (2d Cir. 1998); see also Webster v. Reid, 52 U.S. 437, 451 (1850) ("wherever a court acts without jurisdiction, its decrees, judgments, and proceedings are absolute nullities"); Debevoise v. Rutland Railway Corp., 291 F.2d 379, 380, 381 (2d Cir.), cert. denied, 386 U.S. 876 (1961) ("It is clear that the district court . . . was without jurisdiction to take any action in the

---

[7]    See, e.g., SCS Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 335 (2d Cir. 2004) ("a defect in jurisdiction may be curable by nunc pro tunc dismissal of dispensable jurisdictional spoilers, pursuant to [Rule] 21"); Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 180 (2d Cir. 2007) ("We exercise our authority under [Rule] 21 to cure, ex post, the above-noted jurisdictional defect by dismissing . . . a dispensable jurisdictional spoiler"); Call Center Technologies, Inc. v. Grand Adventures Tour & Travel Publishing Corp., 635 F.3d 48, 51 (2d Cir. 2011) ("We see no error in the district court's decision to cure the jurisdictional defect by dropping GATT from the case").

[8]    "Rule 21 may be invoked only by court order; litigants have no power to effect the changes permitted by the Rule through their own action." 4 Moore's Federal Practice, §21.02[3].

case.  The parties were not of diverse citizenship . . . . Since the district court had no jurisdiction all proceedings taken in it were a nullity, the injunction must be vacated and the case remanded").

Since that question does not seem to have been directly considered, I presume it remains open.  *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 119 (1984) ("When questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us"); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) ("this Court is not bound by a prior exercise of jurisdiction where it was not questioned").

The Newman-Green majority appeared to be primarily motivated by the concern that "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention". 490 U.S. at 836. "If the entire suit were dismissed, Newman-Green would simply refile in the District Court . . . and submit the discovery materials already in hand. The case would then proceed to a preordained judgment . . . . Newman-Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity."  Id. at 837.

However, "[t]he age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases.  Parties often spend years litigating claims only to learn that their efforts and expense were wasted in a court that lacked jurisdiction . . . . Such situations inhere in the very nature of jurisdictional lines".  Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988); Daniel v. American Board of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005). Thus, in

Grupo Dataflux, the Court did not hesitate to dismiss an action for lack of subject matter

jurisdiction even though it had been litigated "for more than 6 1/2 years". 541 U.S. at 582.

Newman-Green's suggestion that a federal court may ignore limitations on its

subject-matter jurisdiction ("hypertechnical" or otherwise) in the interest of "practicality" is

impossible to reconcile with a long line of contrary precedent.  *See*, *e.g.*, Stoll v. Gottlieb, 305

U.S. 165, 171 (1938) ("A court does not have the power, by judicial fiat, to extend its jurisdiction

over matters beyond the scope of the authority granted to it by its creators"); Victory Carriers,

Inc. v. Law, 404 U.S. 202, 212 (1971) ("Due regard for the rightful independence of state

governments, which should actuate federal courts, requires that they scrupulously confine their

own jurisdiction to the precise limits which (a federal) statute has defined"); Christianson, 486

U.S. at 818; Kokkonen, 511 U.S. at 377 (1994) ("Federal courts are courts of limited jurisdiction.

They possess only that power authorized by Constitution and statute . . . which is not to be

expanded by judicial decree").[9]

Notwithstanding Newman-Green's dismissive reference to "hypertechnical

jurisdictional purity", the requirement that a federal court have subject matter jurisdiction before

it may act "is not a mere nicety of legal metaphysics.  It rests instead on the central principle of a

free society that courts have finite bounds of authority, some of constitutional origin, which exist

---

[9]     Second Circuit authority likewise recognizes this principle. *See* Achtman v. Kirby,
McInerney & Squire, LLP, 464 F.3d 328, 333 (2d Cir. 2006) ("Although an exercise of judicial power
may be desirable or expedient, a suit may not proceed absent statutory authorization . . . . In short,
jurisdiction cannot simply be expanded by judicial decree"); United States v. Town of North Hempstead,
610 F.2d 1025, 1029 (2d Cir. 1979) ("No amount of talk can confer subject matter jurisdiction upon a
federal court. Nor can subject matter jurisdiction arise from the circumstance that the exercise of such
judicial power is desirable or expedient").

to protect citizens from . . . the excessive use of judicial power. The courts, no less than the political branches of the government, must respect the limits of their authority." United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 77 (1988).

Some courts have referred to Newman-Green as "creating" jurisdiction.[10] That characterization, while accurate, is troubling, since "[a] federal court is powerless to create its own jurisdiction".  Whitmore v. Arkansas, 495 U.S. 149, 155-56 (1990).  See Note: "Creating Diversity Jurisdiction in Removal Actions Through the Improper Use of Federal Rule of Civil Procedure 21: Procedural Blackjack or Judicial Bust?" 60 Cleveland State Law Review 249, 274 (2012) ("The vague and circular reasoning of Newman-Green has led federal courts to use Federal Rule 21 to carve up removal actions where parties are properly joined in state court to create diversity jurisdiction in federal court . . . . [T]his misuse of Federal Rule 21 not only obstructs the principles of federalism, but it conflicts with other provisions of the Federal Rules themselves").

Therefore, I believe that the proper analysis should be straightforward: "[e]ither the court has jurisdiction at the time the defect is identified (because the parties are diverse at that time) or it does not . . . . If the former, then dismissal is inappropriate; if the latter, then retention of jurisdiction . . . is inappropriate." Grupo Dataflux, 541 U.S. at 576. Indeed, "retention" of

---

[10]        See Herrick, 251 F.3d at 331 ("in Newman-Green, the judgment saved by creating jurisdiction *nunc pro tunc* was a summary judgment"); Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 567 (2d Cir. 2000) (Newman-Green . . . suggests that the courts of appeals may indeed create jurisdiction *nunc pro tunc*"). Moreover, Newman-Green cited with approval (490 U.S. at 830, n. 3) the Second Circuit's statement in Caspary v. Louisiana Land and Exploration Co,, 725 F.2d 189, 191 (2d Cir. 1984) that "[d]istrict courts considering cases in which they lack jurisdiction because of the presence of a non-diverse party can grant an amendment to drop the party and create complete diversity . . . . We see no reason why an appellate court may not also do so".

-13-

jurisdiction under those circumstances would be impossible, for one "cannot retain that which he does not possess". Kibler v. Hart, 28 S.E.2d 324, 325 (Ga.App. 1943).

For that reason, several courts which - unlike the Newman-Green majority - *have* considered the interplay between Rules 21 and 82 have concluded that Rule 82 precludes the use of Rule 21 to create jurisdiction through severance of non-diverse parties. *See*, *e.g.*, Echols v. OMNI Medical Group, Inc., 751 F.Supp.2d 1214, 1217 (N.D.Okla. 2010) ("In reaching the conclusion that severance is inappropriate in this case, the court notes the limitations imposed by [Rule] 82 . . . . So long as all incompletely diverse defendants remain joined this court has no diversity jurisdiction. The court could create diversity jurisdiction only by using Rule 21 to sever the claims against OMNI, but concludes that severance in this case would constitute an impermissible use of the federal rules to extend federal diversity jurisdiction"); Jamison v. Purdue Pharma Co., 251 F.Supp.2d 1315, 1321 (S.D.Miss.2003) ("a district court may run afoul of Rule 82 when it uses a federal rule to sever the claims in a removed case . . . . Such a reshaping of the action by the district court creates jurisdiction where it did not previously exist"); Hagensicker v. Boston Scientific Corp., 2012 WL 836804, *4 (W.D.Mo. 2012) ("if the Court were to sever the treating healthcare defendants, it would be severing parties that were properly joined in order to create subject-matter jurisdiction where it would not otherwise exist"); Ash v. Providence Hospital, 2009 WL 424586, *9 (S.D.Ala. 2009) ("Baxter encourages this Court to sever the claims against the pharmaceutical defendants from those against the medical provider defendants, essentially splitting this action in half, pursuant to Rule 21 . . . . [T]he

Court's reluctance to manufacture federal jurisdiction via artificial means in a case where none exists . . . militate[s] strongly against severing the claims in the manner requested by Baxter").[11]


2.    **28 U.S.C. §1447(c)**

28 U.S.C. §1447(c) states that that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded". Whereas <u>Newman-Green</u> considered "the policies informing Rule 21" (490 U.S. at 832), "policy arguments that are not based in the text of [a] statute are not helpful". <u>Wyeth v. Levine</u>, 555 U.S. 555, 604 (2009).

In this case, the text of the statute could not be more clear. Interpreting another remand statute containing similar language (28 U.S.C. §1407(a)), the Court has held that "the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion". <u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26, 34-35 (1998).[12] "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." <u>Botany Worsted Mills v. United States</u>, 278 U.S. 282, 289 (1929). Had Congress intended to authorize courts to retain a portion of the case by severing claims relating to non-diverse parties, I presume

---

[11]    It should be noted that Justices Kennedy and Scalia, who stated in their <u>Newman-Green</u> dissent that the use of Rule 21 to create jurisdiction raises a "grave, brooding" jurisdictional question, inexplicably changed course in <u>Grupo Dataflux</u>, stating that "[b]y now, it is well settled that Rule 21 invests district courts with authority to allow a dispensable party to be dropped at any time" 541 U.S. at 572-73 (*quoting* <u>Newman-Green</u>). However, that statement too was *dicta*, being unnecessary to <u>Grupo Dataflux</u>'s holding that the action must be dismissed for lack of subject matter jurisdiction.

[12]    *See also* <u>National Association of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 644, 661 (2007), <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002), and <u>Lopez v. Davis</u>, 531 U.S. 230, 241 (2001), all holding that the use of the word "shall" in a statute creates a discretionless obligation.

it would have said so.  2A <u>Sutherland Statutory Construction</u> §47:23 (7th ed.) ("A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way").

Newman-Green clearly states that, at this point, diversity jurisdiction does not exist. 28 U.S.C. §1447(c) just as clearly states that absent subject matter jurisdiction, the case "shall" be remanded, and "the removal statute, like other jurisdictional statutes, is to be strictly construed".  <u>Whitaker v. American Telecasting, Inc.</u>, 261 F.3d 196, 201 (2d Cir. 2001). Therefore, while other courts may have chosen a different path, I "have to give effect to this plain command . . . even if doing that will reverse [a] longstanding practice".  <u>Lexecon</u>, 523 U.S. at 35.  "Age is no antidote to clear inconsistency with a statute." <u>Id.</u>

"The procedural requirements for removal remain enforceable by the federal trial court judges to whom those requirements are directly addressed . . . . [W]e do not [assume] that district courts generally will not comprehend, or will balk at applying, the rules on removal Congress has prescribed." <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 77 (1996).  Therefore, "the likely outcome of an unwarranted removal [is] a swift and nonreviewable remand order."  <u>Id.</u> at 77-78.

I recognize this court's duty to follow precedent, for "[a]dherence to precedent promotes stability, predictability, and respect for judicial authority".  <u>Hilton v. South Carolina Public Railways Commission</u>, 502 U.S. 197, 202 (1991).  However, in this case, deciding between conflicting lines of precedent - that which states that a court may dismiss dispensable parties to cure a jurisdictional defect, or that which states that absent jurisdiction, a court is powerless to act - is by no means an easy task.  Since I must "resolve doubts in favor of remand",

Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 220 (2d Cir. 2013), the fact that I have serious doubts about this court's ability to proceed under Rule 21 furnishes an additional basis for remanding.


**C.      If Rule 21 Does Allow Severance of Claims, Is Severance Appropriate Here?**

Even if I were to conclude that Rule 21 authorizes severance of claims against the Hospital Defendants, I do not believe that severance would be appropriate at this time.

In each of the cases cited by the Insulin Pen Manufacturer Defendants (Memorandum of Law [30], p. 5), the court was influenced by the fact that there had been significant progress in the federal court litigation by the time the jurisdictional issue was raised. *See* Newman-Green, 490 U.S. at 836 ("requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention"); CP Solutions PTE, Ltd. v. General Electric Co., 553 F.3d 156, 160 (2d Cir. 2009) ("We are influenced by the procedural posture in which this case comes to us . . . Although the case has not yet been tried, the parties have litigated for over two years, including conducting discovery").  And in Call Center, "dismissing the non-diverse party preserved a final judgment in favor of the remaining defendants and prevented repetitive litigation".  Rost v. Pfizer Inc., 2012 WL 5458061, *1 (2d Cir. 2012) (Summary Order).

Newman-Green emphasized that the authority to sever the claims against nondiverse defendants "should be exercised sparingly. In each case, the . . . court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation". 490 U.S. at 837-38.  *See also* Herrick, 251 F.3d at 331 ("both the circumstances in

which <u>Newman-Green</u> was decided and the language of the decision itself reveal that power to cure jurisdictional defects . . . although there, is to be used conservatively"). The court should seek the "efficient administration of justice and the avoidance of multiple litigation". <u>CP Solutions</u>, 553 F.3d at 160.

Accordingly, where - as here - the result of severance would be simultaneous litigation in different courts, it is not an abuse of discretion to deny severance. *See* <u>Rost</u>, 2012 WL 5458061, **1-2 ("dismissing Pharmacia here would have . . . led to two parallel litigations: one in federal court against the diverse defendants and one in state court against Pharmacia. Under these circumstances, it was not an abuse of discretion for the district court to deny the motion to dismiss the claims against Pharmacia"); <u>Hagensicker</u>, 2012 WL 836804, *4 (W.D.Mo. 2012) ("Plaintiff and the treating healthcare defendants could both be prejudiced if the treating healthcare defendants were severed . . . . Plaintiff would be forced to litigate her cause of action in two separate forums and may be subject to the defendants in both forums trying to shift the responsibility to the absent defendants. The treating healthcare defendants could be prejudiced by not having the same fact-finder apportion liability among the defendants, potentially subjecting them to a higher apportionment of liability"); <u>Ash</u>, 2009 WL 424586, *9 (S.D.Ala. 2009) ("To subdivide this lawsuit into two separate cases would be highly inefficient, and would render this litigation more cumbersome and fragmented. Ash would be required to fight a war on two fronts").

Since the jurisdictional defect has been raised at the outset of this case, the authority to sever claims under Rule 21 (if that authority exists) should not be exercised here.

## CONCLUSION

For these reasons, I recommend that the motion for remand of the entire action to State of New York Supreme Court, County of Cattaraugus [27] be granted, and that the alternative request for severance and partial remand be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by July 8, 2013 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 19, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge